Hughes *v.* Murtha.

ELIZA J. HUGHES and others, appellants,

*v.*

ROSE MURTHA, executrix, respondent.

That a testator's wife urged upon him the propriety of leaving his property to her, does not constitute undue influence to vitiate the will.

On appeal from decree of orphans court of Essex county, admitting to probate a paper purporting to be the will of Patrick Murtha, deceased.

*Mr. J. W. Field,* for appellants.

*Mr. John Whitehead,* for respondent.

THE ORDINARY.

The testator was, as is proved not only by the testimony of the testamentary witnesses, but also by that of all the others who speak on the subject, of sound and disposing mind when he made his will. The ground on which the will is contested is, that he then was under the influence and restraint of his wife (in whose favor alone the will was made) to such an extent as to destroy his free agency. The will was made more than four years before his death. His wife does not appear to have taken any part in the preparation of it, except to tell the lawyer, Mr. Kingsley, by whom it was drawn, that her husband wanted to see him. Mr. Kingsley went to the house, saw the testator and received

his instructions for the will from him.  The will was drawn accordingly, but was not signed until a day or two after the giving of the instructions.  After it was signed, it was put into an envelope by Mr. Kingsley, and sealed up and left with the testator.

The testator had five children.  The only witnesses against the will are the two contestants (who are two of his daughters) and their husbands.  The substance of their testimony on the subject of undue influence is, that the testator's wife urged upon him the propriety of leaving his property to her.  Such persuasion would not vitiate the will.  On the other hand, not only is this denied, but it appears, by the testimony of other witnesses not connected with the family in any way, that he gave her the property of his own volition.  To Mr. Coleman he said he had not a child to give him anything, and that he feared that those who were taking care of him would not have as good care after he was gone, but that all he could do was to give all his property to his wife, and that he had done so.  To Charles Leist he said that he had made, or was going to make, the will, and leave everything to his wife.  To William Edgar he said, in the summer of 1874, that he had made his will in favor of his wife; that she had helped to gather the little he had, and he considered it only right that she should enjoy it after he had passed away.  And to Mr. Kingsley he said, when he gave instructions for his will, that he wanted to give his property to his wife by his will, because she helped him and took care of him.  In his life-time he gave to one of the contestants a lot of land, and to the husband of the other he made an advance of $500.  He declared that he would leave nothing to his son, for a reason that he gave—he had given him a collegiate education.  He was, of course, entirely at liberty to give all his property to his wife, without regard to his children.  Besides, they were all her children, and the property was not large, and she was old.  There is no evidence of undue influence.  The

19

will appears to have been the result of the testator's convic-
tions of duty as to the disposition of his property.

The decree of the orphans court will be affirmed, with
costs.